# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **NATALIE MCDANIEL,** | ) | CASE NO. 1:17 CV 91 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| **DAVID SHULKIN, SECRETARY** | ) | |
| **DEP'T OF VETERANS AFFAIRS, et al.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants, David Shulkin, Secretary of the Department of Veterans Affairs; the Department of Veterans Affairs; Charles L. Moore, Jr.; Todd John Webber; Vinka M. Lasic; and, Jessica R. Minnich. (Docket #18.) Defendants ask the Court to dismiss all claims raised against them by Plaintiff, Natalie McDaniel.

## I.  Factual and Procedural Background.

Ms. McDaniel is a 38-year-old, African American woman who was employed by the Department of Veterans Affairs ("the Agency") from July 2007 until she resigned on July 2, 2015. (First Amended Complaint at Paragraph 7 and 15.) At all times relevant, Ms. McDaniel worked as a Rating Veterans Service Representative, GS-12. Ms. Mc Daniel alleges that during her employment with the Agency, Defendants engaged in conduct, including "inappropriate

touching, comments, subjective evaluations, workplace sabotage, false accusations of misconduct, failure to promote, failure to grant her reasonable accommodation and the removal of the assets/tools necessary to perform her job" that, viewed in total, was severe and pervasive and created a hostile work environment. (Id. at Paragraphs 16-17.) Ms. McDaniel alleges that "supervisors inquired whether certain females were in a relationship with other females; leered at Plaintiff looking her up and down; stated that Plaintiff was too pretty to get a job; accused Plaintiff of being bad when she was young; referred to Plaintiff as a bitch; and stroked Plaintiff's hair." (Id. at Paragraph 17.) Ms. McDaniel alleges she complained to the Agency that she was being subject to a hostile work environment and filed various grievances and complaints regarding the same. (Id. at Paragraph 18.)

In December 2013, Ms. McDaniel began teleworking from her home 4 days per week. (Id. at Paragraph 25.) Ms. McDaniel states that in June 2014, she was diagnosed with Post Traumatic Stress Disorder, major depressive disorder, and severe anxiety disorder — her alleged disability — for which she still attends therapy and all of which she claims was caused by the alleged harassing conduct during her employment with the Agency. (Id. at Paragraph 19.)

On June 1, 2015, Ms. McDaniel's supervisor told her that her productivity from home needed to improve or he would suspend her telework privileges and she would be required to work in the office full-time. (Final Agency Decision at p. 3.) On June 8, 2015, Ms. McDaniel requested full-time telework as an accommodation for her alleged disability. (First Amended Complaint at Paragraph 22.) Ms. McDaniel states that she communicated to Defendants that she suffered from a disability; asked to telework 5 days per week from home so she would not be exposed to the alleged harassers and hostile work environment which contributed to her disability; and, provided medical documentation to the Agency corroborating the same. (Id. at

Paragraphs 22-25.)[1]

Ms. McDaniel asserts that on July 1, 2015, before a decision was made regarding the requested accommodation, Defendants revoked her teleworking privileges and ordered her to report to work in the office full-time beginning July 6, 2015. (First Amended Complaint at Paragraph 27; Final Agency Decision at p. 3.) Ms. McDaniel alleges that because of her disability, she was unable to return to full-time office work on and, on July 2, 2015, was forced to resign due to the revocation of her teleworking privileges. (First Amended Complaint at Paragraph 35.)

Ms. McDaniel alleges Defendants "maliciously engaged in a patter of harassment that included the adverse action of revoking her teleworking privileges due to alleged productivity issues prior to concluding the interactive process" because she had previously complained about the alleged harassment and hostile work environment; requested an accommodation for her disability; and, filed grievances and complaints. (Id. at Paragraph 27.) Ms. McDaniel asserts that the decision to revoke her teleworking privileges was arbitrary; not consistent with the past practices of the Agency; and, that the Agency's proffered reasons were a pretext for harassment and retaliatory conduct designed to force her to resign. (Id. at Paragraphs 28 and 29.) Ms. McDaniel alleges that Defendants' revocation of her teleworking privileges and rejection of her request for an interim accommodation demonstrate that they were disinterested in addressing her request for an accommodation and that Defendants failed to participate in the interactive process

---

[1] The Final Agency Decision states that Ms. McDaniel did not provide sufficient documentation from a medical provider regarding her functional limitations or the need to telework and that the Agency requested Ms. McDaniel sign a limited release of medical information, but she refused. (Final Agency Decision at p. 10.)

-3-

in good faith. (Id. at Paragraph 33.)

On July 14, 2015, Ms. McDaniel contacted an EEO Counselor with the Agency's Office of Resolution Management. (Id. at Paragraph 36.) Informal counseling failed to resolve the matter and, on September 1, 2015, Ms. McDaniel filed a Formal Complaint with the Agency. The EEO Office investigated Ms. McDaniel's claims that she was discriminated and retaliated against when she lost her telework privileges and that she was subject to harassment that created a hostile work environment. (Id. at Paragraphs 37-39.) A Final Agency Decision was issued on October 13, 2016, concluding that Ms. McDaniel had not established she was subject to discrimination. (Docket #18, Exhibit 2.)

On January 12, 2017, Ms. McDaniel filed her Complaint in this Court against Defendants. On April 28, 2017, Ms. McDaniel filed her First Amended Complaint. (Docket #12.) Ms. McDaniel raises claims for Race and Sex Discrimination (First Cause of Action); Hostile Work Environment (Second Cause of Action); Violation of the Rehabilitation Act (Third Cause of Action); Retaliation (Fourth Cause of Action); Emotional Distress (Fifth Cause of Action); and, Constructive Discharge (Sixth Cause of Action).

On May 30, 2017, Defendants filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Docket #18.) Defendants argue that the individually named Defendants and the "Department of Veterans Affairs" are not proper parties to an employment discrimination action and should be dismissed. Further, Defendants argue that the Ms. McDaniel's emotional distress claim is preempted by the Federal Employee Compensation Act and barred by the failure to exhaust her administrative remedies; that Ms. McDaniel's constructive discharge claim is barred by the failure to exhaust her administrative remedies; and,

that Ms. McDaniel has failed to alleged facts sufficient to support her claims for disparate treatment, hostile work environment, retaliation and the failure to accommodate arising under Title VII and/or the Rehabilitation Act. On June 29, 2017, Ms. McDaniel filed her Memorandum in Opposition and on July 13, 2017, Defendants filed their Reply Brief. (Docket #19.)

**II.     Standard of Review**

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) allows a defendant to test the legal sufficiency of a complaint, in this case whether the Court has subject matter jurisdiction over the claims raised by Plaintiffs, without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating the motion to dismiss, the court must construe the complaint in the light most favorable to plaintiffs, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiffs. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007).

Where the Defendant asks the Court to dismiss the Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court need only determine whether it has jurisdiction over the Plaintiff's claims. The Sixth Circuit has adopted two standards of dismissal under Rule 12(b)(1), depending upon whether the movant makes a facial or factual attack on the Plaintiff's Complaint. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. Ohio 1990). A facial attack merely questions the sufficiency of the pleadings. In reviewing a facial attack, the Court must apply the same standard applicable to Rule 12(b)(6) motions. On the other hand, where a District Court reviews a Plaintiff's Complaint under a factual attack, the Court does not presume that the Plaintiff's allegations are true. In such cases, the Court has wide

-5-

discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Id.; see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.*, 24 F. Supp. 2d 808, 812-13 (M.D. Tenn. 1998). The instant Motion involves both facial and factual attacks on the sufficiency of the Complaint.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 548, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001). It is with this standard in mind that the instant Motion must be decided.

**III.     Discussion**

    **A.     Individual Defendants and the Department.**

Ms. McDaniel's claims against individual Defendants, Charles L. Moore, Jr.; Todd John Weber; Vinka M. Lasic; Jessica R. Minnich; and, the Department of Veterans Affairs fail as a matter of law. Ms. McDaniel raises no specific allegations regarding any individual Defendant; said Defendants are not proper Parties under Title VII or the Rehabilitation Act; and, as set forth below, this Court does not have subject matter jurisdiction over Ms. McDaniel's intentional infliction of emotional distress claim. 42 U.S.C. § 2000e-16(c); *Hancock v. Eggers*, 848 F.2d 87, 88-89 (6th Cir. Mich. 1988).

Accordingly, Ms. McDaniel's First through Six Causes of Action against individual Defendants, Charles L. Moore, Jr.; Todd John Weber; Vinka M. Lasic; Jessica R. Minnich; and, the Department of Veterans Affairs, are hereby DISMISSED WITH PREJUDICE.

    **B.     Analysis of Individual Claims.**

The only remaining Defendant in this case is the Secretary of the Department of Veterans Affairs, David Shulkin.

        **Race/Sex Discrimination.**

In her First Cause of Action, Ms. McDaniel alleges she was subjected to different terms

and conditions of employment than her male and/or white counterparts, in violation of Title VII. of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. In order to establish a *prima facie* case under Title VII for disparate treatment, Ms. McDaniel must show that she was (1) a member of a protected class; (2) subject to an adverse employment action; (3) she was qualified for the position; and, (4) similarly situated employees outside the protected class were treated more favorably. *Clayton v. Meijer*, 281 F.3d 605, 609 (6th Cir. Mich. 2002).

Ms. McDaniel alleges that she was denied a reasonable accommodation; required to return to work while her request for an accommodation was pending; stripped of the tools/assets necessary to perform her job; and, evaluated under subjective criteria. However, there are no facts alleged in the First Amended Complaint that establish or suggest that male and/or white similarly situated employees were treated more favorably. Accordingly, Ms. McDaniel has failed to satisfy a *prima facie* case of race/sex discrimination under Title VII and Defendants' Motion to Dismiss is hereby granted as to Ms. McDaniel's First Cause of Action.

**Hostile Work Environment**

Ms. McDaniel asserts that she was subject to unwelcome physical contact and intimidation, offensive verbal comments, workplace sabotage, false accusations of misconduct, and threats of unwanted discipline from Defendants, based on her gender and race; that the alleged harassment unreasonably interfered with her work performance and created an intimidating, hostile, and offensive environment; and, that Defendants knew or should have known that Ms. McDaniel was being harassed and failed to take adequate action, all in violation of Title VII and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. In order to establish a *prima facie* case for hostile work environment harassment based on the conduct of coworkers, a

plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the employee's protected status; (4) the harassment affected a term, condition or privilege of employment; and, (5) the employer knew or should have known about the harassing conduct but failed to take any corrective or preventive actions. *Woods v. FacilitySource*, LLC, 640 Fed. Appx. 478, 490 (6th Cir. 2016).

Ms. McDaniel has sufficiently pled a claim for hostile work environment harassment. Accordingly, Defendants Motion to Dismiss is hereby denied as to Ms. McDaniel's Second Cause of Action.

### Rehabilitation Act

Ms. McDaniel alleges she suffered from a disability "that was significantly cause by Defendants [sic] pattern of hostile harassing that included unwelcome physical contact and intimidation, offensive verbal comments, workplace sabotage, false accusations of misconduct, and threats of unwarranted discipline that prevented her from continuing to work;" that she was otherwise qualified to perform the essential functions of her job; that Defendants were aware of her disability and could have easily accommodated her needs by permitting her to telework; that Defendants did not, in good faith, enter into the "interactive process" with Ms. McDaniel or provide a reasonable accommodation; and, that Defendants discriminated against her by denying her reasonable accommodation for her disabilities, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.

"Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims." *Shaikh v. Lincoln Mem. Univ.*, 608 F. App'x 349, 353 (6th Cir. Tenn. 2015) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. Ohio

2010)). To establish a *prima facie* case of failure to accommodate under the Rehabilitation Act, a plaintiff must show that (1) she has a disability; (2) she was qualified for the position; (3) the agency was aware of her disability; (4) an accommodation was needed, "i.e., a causal relationship existed between the disability and the request for accommodation;" and, (5) the agency failed to provide the accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. Ky. 1997).

As alleged by Ms. McDaniel, the Agency required Ms. McDaniel stop teleworking and return to work even though it knew of her alleged disability and the alleged hostile work environment that caused and/or exacerbated her disability prior to making a decision on her accommodation, which she claims forced her resignation. While there are questions regarding the nature of the alleged hostile work environment, Ms. McDaniel's disability, Ms. McDaniel's performance, whether medical documentation requested by the Agency was provided by Ms. McDaniel and, the Agency's response to Ms. McDaniel's request for an accommodation, Ms. McDaniel has sufficiently pled a *prima facie* case for failure to accommodate under the Rehabilitation Act. Accordingly, Defendants are not entitled to dismissal of Ms. McDaniel's Third Cause of Action.

**Retaliation**

Ms. McDaniel alleges Defendants intentionally and maliciously retaliated against her for reporting the alleged severe and pervasive hostile environment that existed at her workplace; for requesting a reasonable accommodation for her disability; and, that she was treated differently than comparable employees who did not complain of the hostile environment, request an accommodation, or file a grievance, all in violation of Title VII and the Rehabilitation Act. To

establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) her employer was aware of the protected activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Imwalle v. Reliance Med. Prods.,* 515 F.3d 531, 544 (6th Cir. Ohio 2008).

Ms. McDaniel has failed to sufficiently allege a causal connection between the alleged protected activities and the alleged adverse employment action. As set forth in the First Amended Complaint, Ms. McDaniel complained about her work environment in June 2014, but her telework privileges were not withdrawn for over a year; Ms. McDaniel does not dispute that she asked for an accommodation *after* Defendants told her that her telework privileges may be revoked; and, there are no other facts pled which support a claim that Ms. McDaniel was retaliated against for complaining about a hostile work environment, requesting an accommodation or filing a grievance. Accordingly, under the *Twombly* standard, Defendants are entitled to dismissal of Ms. McDaniel's retaliation claim, her Fourth Cause of Action.

### Intentional Infliction of Emotional Distress.

The Federal Employee Compensation Act ("FECA"), 5 U.S.C. § 8102, provides a comprehensive administrative scheme for federal employees to recover if injured while performing their employment duties. "Intentional infliction of emotional distress claims raised by federal employees, regardless of whether they are brought under state tort law or the FTCA [Federal Tort Claims Act], fall within the purview of FECA and therefore are preempted by the statute." *Batuyong v. Sec'y of DOD*, Case No. 1:07 CV 944, 2008 U.S. Dist. LEXIS 7967, *26-27 (N.D. Ohio Feb. 4, 2008)(citing *Saltsman v. United States*, 104 F.3d 787, 790 (6th Cir. Ky.

1997); *Lockett v. Potter*, 2007 U.S. Dist. LEXIS 9867, 2007 WL 496361, at *1-2 (N.D. Ohio 2007)). "The fact that the Plaintiff's emotional distress claim arises in an employment discrimination context does not render the claim beyond FECA's coverage." *Id*. (citing *Figueroa v. U.S. Postal Service*, 422 F. Supp. 2d 866, 878 (N.D. Ohio 2006) (noting that the "Sixth Circuit has made clear that FECA provides the only remedy for an employee disabled by work-related stress. . . Accordingly, mental distress FTCA claims predicated on a supervisor's workplace conduct are preempted by FECA") (internal citations omitted)). Accordingly, this Court lacks subject matter jurisdiction over Ms. McDaniel's emotional distress claim and her Fifth Cause of Action is dismissed without prejudice.

**Constructive Discharge**.

Ms. McDaniel alleges that she was subject to constant and extreme harassing conduct by Defendants creating a hostile work environment and contributing to her disability; that she complained to Defendants regarding the same; that despite her complaints, Defendants did nothing to remedy the hostile work environment; and, that Defendants ordered her to return to working conditions so intolerable that she was forced to resign from her employment. Defendants argue Ms. McDaniel failed to raise her Constructive Discharge claim with the EEOC and, therefore, that she is barred from raising it in this Court.

The failure to explicitly state a potential claim in an EEOC complaint does not always equate to a failure to exhaust administrative remedies with respect to that claim. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. Mich. 2004). The exhaustion requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.' . . . As a result, the EEOC complaint should be liberally

construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. Ohio 2006)(quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. Ohio 1980); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. Ohio 1992)). Furthermore, a plaintiff will not be barred from raising an uncharged claim in court simply because the EEOC failed to investigate an uncharged claim that reasonably grew out of claims in the complaint. *Dixon*, 392 F.3d at 219.

Based on the language of the Final Agency Decision, Ms. McDaniel's constructive discharge claim could reasonably expected to grow out of the charge of discrimination. Accordingly, Ms. McDaniel is not barred from raising her constructive discharge claim before this Court.

"To constitute constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. Mich. 1999) (discussing the issue in the context of Title VII). Ms. McDaniel claims Defendants withdrew here telework privileges, knowing she was unable to return to work in the office due to her disability which was caused and/or exacerbated by a hostile work environment of which Defendants had knowledge, so she had no choice but to resign. Based on the allegations set forth in the First Amended Complaint, Ms. McDaniel has sufficiently pled a claim for constructive discharge and Defendants' Motion to Dismiss is denied as to Ms. McDaniel's Sixth Cause of Action.

**IV. Conclusion**

For the reasons stated above, the Motion to Dismiss filed the Defendants is hereby GRANTED IN PART AND DENIED IN PART.

All of Ms. McDaniel's claims against individual Defendants, Charles L. Moore, Jr.; Todd John Weber; Vinka M. Lasic; Jessica R. Minnich; and, the Department of Veterans Affairs are hereby DISMISSED WITH PREJUDICE. The only remaining Defendant is the Secretary of the Department of Veterans Affairs, David Shulkin.

Ms. McDaniel's First and Fifth Causes of Action are hereby DISMISSED WITH PREJUDICE.

Ms. McDaniel's Fourth Cause of Action is hereby DISMISSED WITHOUT PREJUDICE.

Defendants' Motion to Dismiss is hereby DENIED as to Ms. McDaniel's Second, Third, and Sixth Causes of Action.

IT IS SO ORDERED.

    s/Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATED: October 13, 2017