UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE MCDANIEL, | ) | CASE NO. 17CV91 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT WILKIE, Secretary of the Department of Veterans Affairs, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant, Robert Wilkie, Secretary of the Department of Veterans Affairs (hereafter "Secretary Wilkie"). (ECF # 40). Plaintiff, Natalie McDaniel (hereafter "Ms. McDaniel") filed a Memorandum in Opposition, (ECF #58-1), and Secretary Wilkie filed a Reply Brief on February 11, 2019. (ECF #61). For the reasons more fully set forth herein, Secretary Wilkie's Motion for Summary Judgment is GRANTED.

I. Factual and Procedural Background

Ms. McDaniel is a 39-year old, African-American woman who was employed by the Department of Veterans Affairs ("the Agency") from July 2007 until she resigned on July 2, 2015. (See ECF #12, ¶¶ 7 and 15). At all times relevant herein, Ms. McDaniel worked as a Rating Veterans Service Representative, GS-12. Ms. McDaniel alleges that employees at the Agency engaged in conduct, including "inappropriate touching, comments, subjective evaluations, workplace sabotage, false accusations of misconduct, failure to promote, failure to grant her reasonable accommodation and the removal of the assets/tools necessary to perform her

1

job," that, viewed in total, was severe and pervasive and created a hostile work environment." (ECF #12, ¶¶ 16-17).

In December 2013, Ms. McDaniel began teleworking from her home 4 days per week. (ECF #12, ¶ 25). Ms. McDaniel alleges that in June 2014, she was diagnosed with Post Traumatic Stress Disorder, major depressive disorder, and severe anxiety disorder, all of which she claims were caused by the alleged harassing conduct during her employment with the Agency. (ECF #12, ¶19). On June 1, 2015, Ms. McDaniel's supervisor told her that her productivity from home needed to improve, or he would suspend her teleworking privileges and she would be required to work in the office full-time. One week later, Ms. McDaniel requested full-time telework as an accommodation for her alleged disability and to avoid alleged harassers and the hostile work environment. (See ECF #12-8, Final Agency Decision, hereafter "FAD").

On July 1, 2015, the Agency revoked Ms. McDaniel's teleworking privileges and ordered her to report to work in the Agency's offices full-time beginning on July 6, 2015. (See FAD, p. 3). Ms. McDaniel alleges that because of her disability, she was unable to return to full-time office work, and, on July 2, 2015, was forced to resign from the Agency. (See ECF #12, ¶27). On July 14, 2015, Ms. McDaniel contacted an EEO Counselor within the Agency, but the matter was not resolved. On September 1, 2015, Ms. McDaniel filed a Formal Complaint with the Agency, alleging she was discriminated and retaliated against when she lost her telework privileges and that she was subjected to harassment that created a hostile work environment. (ECF #12, ¶¶36-39). A Final Agency Decision ("FAD") was issued on October 13, 2016, concluding that Ms. McDaniel had failed to establish that she was subjected to discrimination. (ECF #12-8).

On April 28, 2017, Ms. McDaniel filed her First Amended Complaint. (ECF #12). This Court has previously dismissed Ms. McDaniel's claims of race and sex discrimination, retaliation and emotional distress, and has also dismissed the claims against the Agency and the individually named Agency employees. (See ECF #22). The surviving claims against Secretary Wilkie[1] are hostile work environment, disability discrimination and constructive discharge.

On October 31, 2018, Secretary Wilkie filed his Motion for Summary Judgment, arguing that Ms. McDaniel cannot show she was subject to a hostile work environment, and furthermore, cannot show that the VA knew or should have known of any alleged harassment. (ECF #40-1, pp. 5-8). Secretary Wilkie also argues that Ms. McDaniel has not proven she is considered disabled under the law, nor has she proven that the Agency failed to provide an accommodation. (Id. at pp. 9-13). Finally, Secretary Wilkie argues that Ms. McDaniel's constructive discharge claim fails because she has not proven that her working conditions were "objectively intolerable" before she resigned from her employment. (Id. at pp. 13-15).

II. Standard of Review

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

---

[1] Ms. Mc Daniel named VA Secretary David Shulkin as a Defendant in her Amended Complaint. Robert Wilkie is the current Secretary of the Department of Veteran Affairs, and therefore, pursuant to Fed. R. Civ. P. 25(d), Robert Wilkie is automatically substituted for former Secretary David Shulkin in this suit.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of*

*Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does "not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

III. <u>Analysis</u>

    A. <u>Hostile Work Environment</u>

Ms. McDaniel alleges that she was subject to unwelcome physical contact and intimidation, offensive verbal comments, workplace sabotage, false accusations of misconduct, and threats of unwarranted discipline from employees at the VA, based on her gender and race.

5

Ms. McDaniel claims that this alleged harassment unreasonably interfered with her work performance and created an intimidating, hostile, and offensive environment, and that the VA knew or should have known about the harassment and failed to take adequate action, all in violation of Title VII and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (hereafter the "Rehabilitation Act").

In order to establish a prima facie case of hostile work environment harassment based on the conduct of coworkers, a plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the employee's protected status; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take any corrective or preventative actions. *Woods v. FacilitySource, LLC,* 640 Fed. Appx. 478, 490 (6th Cir. 2016).

In order to prevail, Ms. McDaniel must show that the working environment at the Agency "was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Id; citing Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993). The hostile conduct must be more than "a mere offensive utterance," it must be severe and pervasive to rise to the level of an objectively hostile work environment. *Ault v. Oberlin Coll.,* 620 F.App'x 395, 399-400 (6th Cir. 2015). Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000).

Ms. McDaniel makes subjective and unsubstantiated claims that a few times, her Supervisor, Charles Moore, looked at her inappropriately and commented on her appearance.

6

Ms. McDaniel did not report these alleged incidents to the Agency, nor did any of the alleged witnesses to the incidents. (See Ms. McDaniel Depo. pp. 36-43; 49-53). Ms. McDaniel makes no claim that these isolated events would also offend the sense of an ordinary, reasonable person. *See Harris, supra*, 510 U.S. at 24. As Secretary Wilkie points out in his Reply Brief, "Plaintiff herself acknowledges that she relies on her own, subjective interpretation of these events." (ECF #61, p. 2 (citing to Ms. McDaniel's deposition)).

Ms. McDaniel also complains that another Supervisor, Vinka Lasic, ("Ms. Lasik") "micromanaged" her work, and was allegedly hostile because "she was very interested in what I was doing, [and] how I was doing it…instead of taking my word for it." (McDaniel Deposition at 171-72). Ms. McDaniel alleges that Ms. Lasic also commented on her hair a few times and touched her hair once. These incidents occurred over the course of several years.

These few, isolated incidents of alleged harassment do not create a hostile work environment, as they do not create a workplace atmosphere that is "both objectively and subjectively offensive." *Lovelace v. BP Products North America*, 252 Fed.App. 33, 41 (6th Cir. 2007). Despite McDaniel's subjective belief that she was a victim of workplace harassment, "the record is devoid of competent summary judgment evidence of discrimination that is severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive." *Wiley v. Slater*, 20 F.App'x 404, 406 (6th Cir. 2001).

Even if Ms. McDaniel had proven that a hostile work environment existed at the Agency, Ms. McDaniel cannot prove that the Agency knew or should have known about the alleged harassment as required as a matter of law. *See Woods v. Facilitysource, LLC*, 640 F. App'x 478, 490 (6th Cir. 2016). Ms. McDaniel testified she did not report any of the alleged incidents to Agency management. Since an employer's actual or constructive knowledge is a prerequisite to a

7

hostile work environment claim, and Ms. McDaniel did not report these incidents, Secretary Wilke is entitled to judgment as a matter of law.

B. <u>Disability Discrimination</u>

To establish a prima facie case of failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) and the Rehabilitation Act, Ms. McDaniel must show that (1) she has a disability; (2) she was qualified for the position; (3) the agency was aware of her disability; (4) an accommodation was needed; and (5) the Agency failed to provide then modification. *Willard v. Potter*, 264 Fed.Appx. 485, 487 (6th Cir. Mich. 2008)(*citations omitted*). Ms. McDaniel argues that she suffered from a disability, anxiety and depression, and that the Agency failed to provide a reasonably accommodation by refusing to allow her to work from home five days per week. (ECF #12, ¶¶ 51-61).

First, Ms. McDaniel has not sufficiently shown that her diagnoses constituted disabilities. There is no evidence indicating that "one or more major life activity" was substantially limited, nor has Ms. McDaniel explained how her anxiety and depression have substantially limited her daily activities. *See, e.g., Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997). A medical diagnosis alone is not enough to demonstrate a disability under the ADA. *See McNeil v. Wayne County*, 300 Fed.Appx. 358, 361 (6th Cir. 2008)(*citing Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002). Similarly, merely stating a claim that these conditions were made worse while working at the VA is not sufficient to prove a disability. Ms. McDaniel must prove that the condition caused an "inability to work" under present conditions. *See Myers v. Cuyahoga Cty.*, 183 F.App'x 510, 516 (6th Cir. 2006). Without such evidence, Ms. McDaniel cannot prove she was disabled while employed with the Agency.

In addition, there is no evidence to suggest that the Agency failed to provide a reasonable accommodation to Ms. McDaniel. The record shows that when the Agency allowed Ms. McDaniel to telework four days per week, her productivity decreased. Therefore, it was not unreasonable for the Agency to refuse increasing her telework to five days per week, because there was evidence that Ms. McDaniel was not "able to satisfactorily perform her duties within that accommodation" request. *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015).

Furthermore, Ms. McDaniel resigned from the Agency before any discussion regarding other potential reasonable accommodations. Ms. McDaniel also admitted that she "refused to sign a medical release" so that the Agency could request medical information regarding her alleged disabilities. (ECF #58-1, p. 23). When a plaintiff does not participate in this shared "interactive process" in good faith, and resigns while the process is ongoing, an employer cannot be found liable of disability discrimination. *See Kleiber v. Honda of America Mfg., Inc.*, 420 F.Supp.2d 809 (S.D. Ohio 2006). Therefore, the Agency cannot be found liable for failure to accommodate Ms. McDaniel when she failed to engage in this process to find alternative accommodations. *See Gleed v. AT&T Mobility Services, LLC*, 613 Fed.Appx. 535, 539 (6th Cir. 2015).

For these reasons, Ms. McDaniel's claim that the Agency failed to provide a reasonable accommodation fails, and Secretary Wilke is entitled to judgment as a matter of law.

### C. Constructive Discharge

Ms. McDaniel alleges that when she was told to return to the Agency offices full-time, she was forced to resign rather than face the hostile and intolerable working conditions.

"To constitute constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the

employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). When faced with similar hostile-environment constructive discharge claims, plaintiffs must present evidence proving not only harassment, but they are required to show activity "so intolerable that a reasonable person would be forced to quit." *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

The allegations presented by Ms. McDaniel do not show that anyone at the Agency acted intentionally to make her quit. In fact, Ms. McDaniel did not depose any employee at the Agency, and therefore, cannot begin to address the seven factors used to assess an employer's intent: demotion, salary reduction, job responsibility reduction, reassignment to less desirable work, reassignment to work under a younger supervisor, harassment by the employer for the purpose of forcing plaintiff to quit, or an offer to continue working but on less favorable terms. *See Presley v. Ohio Dept. of Rehab. and Corr.*, 675 Fed.Appx 507, 515 (6th Cir. 2017)(*citing Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001). As Secretary Wilkie points out, Ms. McDaniel does not claim that her salary or benefits were ever reduced, rather, she "merely alleges unpleasant working conditions and the revocation of her telework privileges, both of which are insufficient to support her constructive discharge claim." (ECF #61, p. 7). Moreover, Ms. McDaniel testified that any changes to her workload and job responsibilities were primarily due to staffing considerations. (See McDaniel Dep. at pp. 80-100).

Considering these seven factors, Ms. McDaniel has failed to show sufficient support for her claim of deliberate, objectively intolerable working conditions, and therefore, her constructive discharge claim fails as a matter of law.

IV. <u>Conclusion</u>

For the reasons set forth herein, Secretary Wilkie's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Court

Date: February 13, 2019